**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| DANNIS R. TAYLOR, et al., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| v. | ) | Case No. CIV-18-565-D |
| | ) | |
| CHESAPEAKE OPERATING, INC., | ) | |
| | ) | |
| *Defendant*. | ) | |

**ORDER**

This matter comes before the Court on Defendant Chesapeake Operating, Inc.'s Motion to Dismiss [Doc. No. 23]. Plaintiffs have filed a response in opposition [Doc. No. 31], to which Defendant has replied [Doc. No. 32]. Plaintiffs have also filed a Motion for Leave to Amend their complaint as needed [Doc. No. 33]. The matter is fully briefed and at issue.

**BACKGROUND**

Defendant operates wells on Plaintiffs' land. Response [Doc. No. 31], at 4. Pursuant to the contract at issue, Defendant is "to operate the wells and account for revenue and costs, make payments, and provide information to owners of interests in the wells on [Plaintiffs'] property." *Id*. Plaintiffs allege to have been underpaid royalties. Defendant contends this is a simple breach of contract claim and nothing more. Motion at 3. Plaintiffs, however, maintain this action sounds in fraud. They allege Defendant engaged in a fraudulent scheme, involving hundreds of acts of fraud over the course of several years, by which Plaintiffs were deceived and underpaid. *Id*. at 5

## STANDARD OF DECISION

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The "plausibility standard" announced in *Twombly* and *Iqbal* is not a "heightened standard" of pleading, but rather a "refined standard." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citing *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011)). Under the "refined standard," plausibility refers "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik*, 671 F.3d at 1191; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Further, the Tenth Circuit has noted that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Khalik*, 671 F.3d at 1191.

Claims sounding in fraud must be pled with particularity, under a heightened pleading standard. *See* Fed. R. Civ. P. 9(b). The particularly requirement of Rule 9(b) applies to claims of mail and wire fraud under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 ("RICO"). *See Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006).

## DISCUSSION

Plaintiffs' Amended Complaint [Doc. No. 20] sets forth six causes of action. Plaintiffs' claims are as follows: (1) RICO violations; (2) unjust enrichment; (3) conversion; (4) beach of lease; (5) breach of overriding royalty interest; and, (6) actual and constructive fraud, and negligent misrepresentation. Defendant argues that because Plaintiffs lack standing to bring RICO claims, this Court lacks subject matter jurisdiction and should remand the remaining state law claims. In the alternative, Defendant seeks dismissal of counts one, two, three, and six of Plaintiffs' Amended Complaint (referred to as the first, second, third, and sixth causes of action), for failure to state a claim upon which relief can be granted.

### I. Plaintiff's RICO allegations suffice to survive a motion to dismiss.

Defendant argues (1) Plaintiffs fail to show they were injured by the alleged RICO violations; (2) the predicate act of wire fraud is not pled with particularity; (3) the predicate act of mail fraud is not pled with particularity; (4) there is no allegation of a pattern of racketeering activity; and, (5) Plaintiffs fail to plead an enterprise.

RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). Plaintiffs allege violations of § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

To survive a Rule 12(b)(6) motion to dismiss a § 1962(c) claim, Plaintiffs must allege that Defendant "(1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Tal*, 453 at 1244. "[R]acketeering activity" is defined to include several predicate acts, including the two alleged here—mail fraud and wire fraud. In addition to these elements, Plaintiffs must also show proximate causation between the RICO predicate act and the injury. *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 8 (2010).

*a. Plaintiffs allege more than simple breach of contract.*

Defendant argues that because the injury resulting from the breach of contract claim and the alleged RICO violation are the same, Plaintiffs lack standing to bring a claim under RICO.

"No distinct 'racketeering injury' requirement is necessary to maintain a private treble damages action under RICO." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495–96 (1985). If the "defendant engages in a pattern of racketeering activity in a manner forbidden by section 1962 and the racketeering activities injured the plaintiff in his business or property," that is enough. *Id*. "[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Id*. at 496.

Defendant's position that Plaintiffs lack standing because "they were damaged not by supposed racketeering activity, but instead by breach of contract, an underpayment of royalty," is contrary to binding precedent. Reply at 10. The Supreme Court has disavowed any requirement that a separate racketeering injury be alleged to maintain a RICO claim.

Further, at this stage in the proceedings, Plaintiffs have sufficiently pleaded the requisite proximate cause. To this end, Plaintiffs allege that the predicate mailings transmitted the fraudulent royalty statements, as well as the related royalty underpayments. PAC at ¶¶ 18,19,30,45. The harm alleged is concrete and ascertainable. *Id*. at ¶¶ 31,34,40,37. Plaintiffs allege they were also denied access to the information they needed to accurately calculate the amount of money due to them. *Id*. at ¶¶ 44,83,68.

Plaintiffs allege more than a simple breach of contract claim. They assert Defendant entered into an unlawful agreement with three other entities to purposefully underpay and deceive lessors. *Id*. at ¶¶ 43–45. Thus, beyond the terms of their contracts, Plaintiffs allege Defendant engaged in fraud to disguise the fact that Defendant was unlawfully profiting at Plaintiffs' expense. PAC at ¶¶ 43. These allegations—connected to the leases at issue as they may be—specifically refer to Defendant's intent to defraud and deceive Plaintiffs. They "go beyond a mere breach of contract." *See Jeter v. Wild W. Gas, LLC,* No. 12-CV-411-TCK-PJC, 2015 WL 5970992, at *13 (N.D. Okla. Oct. 14, 2015) (rejecting the argument that causation is lacking because the RICO allegations are merely "repackaged" contract claims).

The Court finds Plaintiffs, at this stage of the proceedings, have done enough to allege the required proximate causation under RICO.

*b. Plaintiffs allege the predicate acts of mail and wire fraud with sufficient particularity to survive a motion to dismiss.*

Defendant asserts that Plaintiffs fail to plead the predicate acts with particularity. The two predicate acts identified in this case—mail fraud and wire fraud—were also at issue in

*Tal v. Hogan,* 453 F.3d 1244 (10th Cir. 2006), where the court of appeals explained as follows:

To establish the predicate act of mail fraud, [Plaintiffs] must allege "(1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme." *Bacchus Indus., Inc. v. Arvin Indus., Inc*., 939 F.2d 887, 892 (10th Cir. 1991); *see United States v. Kennedy*, 64 F.3d 1465, 1475 (10th Cir. 1995). "The elements of wire fraud are very similar, but require that the defendant use interstate wire, radio or television communications in furtherance of the scheme to defraud." *BancOklahoma Mortgage Corp*., 194 F.3d at 1102 (internal quotation omitted).

> [T]he common thread among ... these crimes is the concept of "fraud." Actionable fraud consists of (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance; (8) the hearer's right to rely on it; and (9) injury.

*Id*. at 1103. Failure to adequately allege any one of the nine elements is fatal to the fraud claim. *Tal*, 453 F.3d at 1263. Further, "[a] plaintiff asserting '[mail] fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme.'" *Id*. (quoting *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992)). The particularity requirement of Rule 9(b) clearly applies to these fraud claims. *See Tal*, 453 F.3d at 1263; *see also Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002); *accord Apache Tribe of Okla. v. Brown*, 966 F. Supp. 2d 1188, 1194 (W.D. Okla. 2013) (DeGiusti, J.).

At this early stage in the proceedings, the Court finds Plaintiffs' Amended Complaint sets forth sufficient facts to put Defendant on notice as to the time, content, and

nature of the mail and wire fraud. The time, place, and contents of the false representation are reflected in the royalty statements sent to Plaintiffs every month from January 28, 2005 through August 31, 2016. PAC ¶ 39. Plaintiffs allege five instances of mail fraud and wire fraud occurred between the 25th and 31st of each month. *Id.* at ¶ 50. The check stub attached to the Amended Complaint and the alleged facts regarding the internal spreadsheet illustrate the allegedly fraudulent deductions. Defendant is the party making the statements. *Id.* at ¶ 43. The purpose of the mailing within the fraudulent scheme was to mislead Plaintiffs as to the method for calculating their royalty payments and, ultimately, the proper amount of royalty payments due. *Id*. Plaintiffs introduce specific facts as to how Defendant, with the knowledge and approval of related entities, fraudulently deducted costs and included this misleading information in check stubs, *id.* at ¶¶ 42–45, this all in execution of a scheme to defraud Plaintiffs. *Id.* at ¶ 47. Mails were used to "send to Plaintiffs the royalty payments and check stubs which misrepresented the price, gross value, production tax and deductions." *Id.* at ¶ 48. Other Plaintiffs—including Dennis Taylor, residing in Hudson Oaks, Texas, and receiving a payment on August 30, 2005—accept payment via wire. *Id.* at ¶ 50. Those who received these communications were unaware of the misrepresentations and relied on them. *Id.* at ¶¶ 24–26.

The Court finds sufficient particularity in these allegations to survive a motion to dismiss. *See Jeter*, 2015 WL 5970992, at *11.

*c. Plaintiffs sufficiently allege a pattern of racketeering activity.*

Next, Defendant argues Plaintiffs have failed to allege facts establishing a pattern of racketeering activity. Motion at 13.

"[T]o satisfy RICO's pattern requirement, [a plaintiff must] allege not only that the defendants had committed two or more predicate acts, but also that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity." *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010) (quoting *Hall v. Witteman*, 584 F.3d 859, 867 (10th Cir. 2009)) (emphasis in original). "'[T]he term pattern itself requires the showing of a relationship between the predicates and of the threat of continuing activity,' so that it is 'continuity plus relationship which combines to produce a pattern.'" *United States v. Knight*, 659 F.3d 1285, 1288–89 (10th Cir. 2011) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239 (1989)). Although the relatedness of predicate acts is not difficult to establish, "[t]he showing required for 'continuity' . . . is more difficult to meet." *Bixler*, 596 F.3d at 761 (internal quotation omitted). "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J.*, 492 U.S. at 241; *see also Bixler*, 596 F.3d at 761. "[C]ontinuity over a closed period" requires "a series of related predicates extending over a substantial period of time." *H.J.,* 492 U.S. at 242; *see also Boone v. Carlsbad Bancorp., Inc.,* 972 F.2d 1545, 1556 (10th Cir. 1992).

As opposed to alleging a single fraudulent business deal between two entities, Plaintiffs here allege the "existence of long-term criminal activity committed against a

multitude of royalty owners." *Jeter*, 2015 WL 5970992, at *10 n.13; *cf. Tal*, 453 F.3d at 1267–68 (questioning whether "grant of one development contract acquired through misrepresentation of financial backing" constitutes a distinct threat of long-term racketeering activity). Plaintiffs allege that Defendant committed "695 acts of fraud over the course of 11 years and 7 months," pertaining to "the same oil and gas wells, victimized the same individuals, for the benefit of the same members of the enterprise and employing the same logistics." Response at 17–18. Accepted as true and viewed in the light most favorable to Plaintiffs, this is sufficient to survive a motion to dismiss. Whether Plaintiffs can establish their claims is yet to be seen. *See Brown v. Access Midstream Partners, L.P.*, 141 F. Supp. 3d 323, 337 (M.D. Pa. 2015).

*d. Plaintiffs sufficiently allege the existence of an enterprise.*

Finally, Defendant asserts Plaintiffs failed to plead an enterprise, as they have given "no particulars concerning what Chesapeake allegedly did, other than to conduct its own business and to pay royalties." Motion at 14.

Plaintiffs must establish that Defendant was associated with and participated in the "operation or management" of the enterprise to bring a cause of action pursuant to civil RICO. *Reves v. Ernst & Young*, 507 U.S. 170, 184 (1993). For a defendant "to conduct or participate" in the affairs of a RICO enterprise, a defendant must, in some capacity, direct the affairs of the enterprise. *Id*. at 178–79. A defendant will not be liable simply because he provides services that benefit the enterprise; instead, there "must be a nexus between the person and the conduct in the affairs of an enterprise. The operation or management test goes to that nexus." *Id*.

Plaintiffs allege Defendant and three other entities constitute an "enterprise" or "association-in-fact." PAC at ¶¶ 63,65. These four entities "owned a portion of the lessee's interests in the oil and gas leases." *Id*. at ¶ 16. Defendant was allegedly compensated for executing the fraud scheme, *id*. at ¶ 65, and allegedly did so by "by taking unauthorized royalty deductions and then sending false check stubs showing no deductions." *See Jeter*, 2015 WL 5970992, at *9. This will suffice to survive a motion to dismiss.

Therefore, the Court denies Defendant's motion to dismiss count one, or the "First Cause of Action," of Plaintiffs' Amended Complaint.

## I. Plaintiffs may plead in the alternative and state a claim for unjust enrichment.

Defendant next asserts that Plaintiffs cannot pursue a claim for unjust enrichment, an equitable remedy, where an adequate remedy at law is available. Motion at 15.

Unjust enrichment arises "from the failure of a party to make restitution in circumstances where it is inequitable," or one party holds property "that, in equity and good conscience, it should not be allowed to retain." *Harvell v. Goodyear Tire and Rubber Co*., 164 P.3d 1028, 1035 (Okla. 2006); *accord Am. Biomedical Grp., Inc. v. Techtrol, Inc.,* 374 P.3d 820, 828 (Okla. 2016). "One is not unjustly enriched, however, by retaining benefits involuntarily acquired which law and equity give him absolutely without any obligation on his part to make restitution." *McBride v. Bridges*, 215 P.2d 830, 833 (Okla. 1950). Further, a party is not entitled to pursue a claim for unjust enrichment when it has an adequate remedy at law for breach of contract. *Krug v. Helmerich & Payne, Inc*., 362 P.3d 205, 209 (Okla. 2015).

Though Defendant may own only a partial interest in the oil and gas lease at issue, an adequate remedy at law does exist to make Plaintiffs whole. Plaintiffs argue that Defendant was not a party to the contracts at issue. Response at 10 ("Plaintiffs have not alleged that Defendant owns any interest in the oil and gas lease."). But Plaintiffs then go on to say that Defendant perhaps owns a partial interest. *Id.* at 28. And Plaintiffs have, in fact, stated a breach of contract claim against Defendant. PAC at ¶ ¶ 101–05.

The Court has carefully reviewed the pleadings and presumed all of Plaintiffs' factual allegations are true, construing them in the light most favorable them. The Court finds that, at this stage of the litigation, Plaintiffs have the right to plead alternative theories of recovery and, therefore, Plaintiffs' unjust enrichment claim should not be dismissed. *See Briggs v. Freeport-McMoran Copper & Gold, Inc.,* No. CIV-13-1157-M, 2015 WL 1461884, at *6 (W.D. Okla. Mar. 30, 2015).

**II. Plaintiffs' conversion claim must be dismissed, as Defendant is not alleged to have converted any tangible property.**

Defendant asserts that Plaintiffs' conversion claim must be dismissed, as conversion under Oklahoma law is reserved for personal property.

"Conversion is any act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with, his rights therein." *Steenbergen v. First Fed. Sav. & Loan*, 753 P.2d 1330 (Okla. 1987). The general rule in Oklahoma is that only tangible personal property may be converted. *Shebester v. Triple Crown Ins.*, 826 P.2d 603 (Okla. 1992). Conversion will not lie for a debt. *Steenbergen*, 753 P.2d at 1332. Black defines conversion as "an unauthorized assumption and exercise of the right of ownership

over goods or personal chattels of another." BLACK'S LAW DICTIONARY 333 (7th ed. 1999); *accord Welty v. Martinaire of Okla., Inc*., 867 P.2d 1273, 1275 (Okla. 1994).

Plaintiffs here make no assertion that Defendant has converted any of their personal chattels. Under Oklahoma law, the failure to pay royalties creates a debt, and does not result in the deprivation of personal property. *See Welty,* 867 P.2d at 1275; *Tarrant v. Capstone Oil & Gas Co.*, 178 P.3d 866, 872 (Okla. Civ. App. 2008) ("Conversion does not lie for a debt. The failure to pay royalties in this case created a debt; it did not result in Royalty Owners being deprived of tangible personal property.").

Plaintiffs conversion claims must be dismissed for failure to state a claim upon which relief can be granted.

**III. Plaintiffs have alleged sufficient facts to maintain a state law fraud claim.**

Finally, Defendant argues that Plaintiffs have failed to plead with particularity the elements of fraud.

"In Oklahoma the elements of fraud are: 1) a false material misrepresentation; 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth; 3) with the intention that it be acted upon; and, 4) which is relied on by the other party to his or her own detriment." *Lopez v. Rollins*, 303 P.3d 911 (Okla. Civ. App. 2013).

As more carefully analyzed *supra*, Plaintiffs have alleged sufficient facts for these claims to survive a motion to dismiss. They have identified the discrepancies between an internal spreadsheet and a check stub. Plaintiffs explain exactly how the check stub representations differ from the internal spreadsheet, obtained from Defendant's employee.

PAC at ¶¶ 21–27, 31. Allegedly, Defendant has accurate knowledge of the data that it should be providing to Plaintiffs. *Id*. at ¶ 27. Nevertheless, Defendant is also alleged to have mailed out check stubs containing inaccurate information and concealing the information Plaintiffs needed to properly calculate royalty payments. *Id*. at ¶¶ 27–29. Plaintiffs provide the approximate dates of the misrepresentations. *Id*. at ¶ 32. And finally, Plaintiffs allege they relied on the misrepresentations to their detriment. That is, they "accepted the payment in reliance on [Defendant's] misrepresentations in the check stubs and believed the royalty payments were calculated accurately and that they were being paid correctly." *Id*. at ¶ 25.

At this stage in the proceedings, considering Rule 9(b)'s more stringent pleading requirements, these allegations suffice to survive a motion to dismiss.

## CONCLUSION

For the reasons more fully set forth herein, the Court finds the "third cause of action" of Plaintiffs' Amended Complaint [Doc. No. 20], fails to state a claim under Fed. R. Civ. P. 12(b)(6). Plaintiffs have moved for leave to amend [Doc. No. 33], and such leave shall be granted.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' "Third Cause of Action" for conversion is **DISMISSED WITHOUT PREJUDICE**. Plaintiffs may file an amended complaint no later than twenty-one (21) days from the issuance of this Order.

**IT IS SO ORDERED** this 20th day of November, 2019.

TIMOTHY D. DeGIUSTI
Chief United States District Judge